# ORPHANS' COURT OF BALTIMORE CITY

Filed May 31, 1892.

## IN THE MATTER OF THE ESTATE OF RACHEL ROANE.

*Wm. A. Fisher, Wm. Reynolds* and *Paul M. Burnett* for petitioner.

*Wm. Pinkney Whyte* and *Richard R. Battee* for Mrs. Hollingshead.

LINDSAY, GANS and EDWARDS, J.J.—

This case is brought before the court by petition in the form of a caveat by Lewis E. Roane, husband of the deceased, praying that the court may refuse to admit to probate the paper writing propounded as the last will

and testament of the said Rachel Roane, nee Hollingshead, and that letters of administration may be granted to him, the said Lewis E. Roane, for the reason that the paper writing so propounded as a will was executed by the deceased when she was a *feme sole*, and that her subsequent marriage to him operated, in law, as a revocation thereof; that he is therefore entitled to her personal estate absolutely, and to a life estate in her real property, and for other reasons.

The petition is duly answered by the executrix, Elizabeth Hollingshead, denying that the marriage of the deceased works a revocation of the will, and also that he is entitled neither to the administration of the estate or to the estate itself, as he claims.

In the hearing of the case there was but one witness called to testify, and that was to the effect of their having lived together affectionately as husband and wife, which, being objected to, was ruled out.

The case was exhaustively argued by the counsel on both sides, and then submitted to the court for its decision.

Both sides admit, of course, the presence and operation of the common law in this State. The rule of the common law in cases of this character is that a will made by a *feme sole*, who afterwards marries, is revoked by such marriage, the reason being the radical change which such marriage creates in her condition and relations.

Here the main question evidently is: Is this law, though operating in this State, applicable to the present case? If it is, then it would follow that the said will, being made as above stated, and the marriage subsequently occurring, did work a revocation thereof, for the form of the law itself is very clear and positive. If the law is not applicable, then it would follow, with equal clearness that this testamentary paper would stand, so far at least as this law is concerned, as a good and valid will.

In seeking to determine the question whether this common law rule is applicable to the present case, we are naturally led to ask:

1. What are the disabilities attaching to the married woman and her will, which it was and is the purpose of the common law to alleviate?

2. What are the statutory laws which have been enacted in this State in reference to the woman and her testamentary power to dispose of her property?

1. At common law (and we desire to be as brief as possible in our statement) the married woman had no power to dispose of her property by will, nor, indeed, in any other way. This property, of whatever kind it might be, passed by the very act of the marriage, *eo instanter*, under the control of her husband, so that actually nothing remained legally in her which might be the subject of a will.

Neither did she possess the correlative power, after her marriage, to revoke her will made while she was a *feme sole;* and not having this power, her will was deprived of its ambulatory character up to the time of her death, which had the effect of rendering the will itself fatally defective. On this account, the common law in reference to this point arose and stepped to her aid, and declared that every such will should be considered as being revoked by her marriage, and by this alone.

2. What now are the statutory provisions which have been made in this State in favor of woman in these respects? All this has been radically changed. No State, perhaps, has gone farther in this line than our own— none could, indeed, go much farther in some of the most fundamental features connected with woman's testamentary power. By these statutes, woman may now dispose of her property, of whatever kind, just as she may see fit and proper. (Code, Art. 45, Secs. 1 and 2.) She does this as a *feme sole*, with entire freedom. It is true that there may be some few peculiar species of property coming into her possession not technically enumerated in the first section of the statute mentioned. But the manifest intent of the statute being to comprehend all that she may die possessed of, it could hardly be successfully argued that this rare possibility would or could constitute such a significant remnant of the ancient feudal limitations upon woman's power in this respect, as to open the way for, and justify the application of the common law rule; for, besides the rareness of such possession, all that she leaves may, and as a matter of fact,

does pass as she directs in her will, under the present statute.

She has also the co-relative power to revoke her will made prior to her marriage, and this power, like the former, is also full and complete. Both these powers, given under statute, with bona fide intent, are now in every woman in the State, of competent mind, and they would seem ample to meet every need in this respect that she, or any of her friends for her, might or could desire. Now, possessing this power, or these powers, as she does, and having made a will while *feme sole*, and not using her right so given after her marriage to revoke or change it, does not such conduct on her part—which always speaks louder than words—say in very plain terms, that she meant her will to stand as she originally made it?

These disabilities now taken out of the way of the woman and her will, and these plenory statutes put in their place, where remains even the occasion to say nothing of the cause of the application of this old common law rule? It would certainly seem that we had developed out of and gone beyond it. Common law does not operate in regard to any point fairly covered and controlled by statute; and this being true—and there is none to dispute it—it would appear to follow logically and necessarily, that there can be no revocation by inference of law where that same power is given expressly by statute.

It cannot, in our opinion, be here objected and said, that if this be true, then neither would the common law rule in regard to man be applicable to revoke his will, made while he was single and when he subsequently married and had a child or children. The two cases are not parallel. The man was not under disability in this view, as was the woman, when the common law took its shape in reference to him; for his power then was as ample as it is now, to make and unmake his will. The common law applied to him then in spite of this fact, when, after making his will he married and had a child or children—clearly having as its object the protection, by means of his property, of his offspring, and continues, for the same reason, to apply to him now in the same circumstance— there being in the meantime no statute changing it or determining otherwise.

The reason originating, the common law ceasing, both as to the power to make and the power to revoke the will in the case of the married woman, the application of the law, and even the law itself—it having no other basis—must cease also. This rule has crystallized itself in the following maxim: "*Mutata legis mutatur et lex*"—the strongest sort of common law—and has been practically applied in the way of limitation to the whole body of like law through many ages.

But besides all this, we have carefully examined the decisions of other States upon the particular point we are now called upon to determine, where the statutory provision for the woman and her will are generally or approximately similar to the statutes in this State, and the result is, that we find them to vary just to the extent to which the statutes themselves approximate to, or remove from the old Feudal system of England. In those States where woman's disabilities have not been removed, or not to a degree that would justify the suspension of the common law rule, there the decision is that marriage does revoke the will. Where these disabilities have been removed to a greater degree, but still not entirely, then the decisions say that, in addition to marriage, there must be the birth of a child, in order to revoke the will. But where, by the statutes, these disabilities have been removed entirely, or as nearly so as may be, as in our own State, there all the decisions, in great harmony, say that marriage alone will not revoke the will. This, to our minds, furnishes a very clear and correct insight into the posture of the judicial mind of our country touching this point, and may serve as a prohpecy, so as to say, as to what will be the ultimate authoritative determination of the general question, when the matter shall be adjudicated by the Court of last resort.

The cases decided in other States, which are most directly to the points here in issue, and which we have more particularly examined, are the following:

59 Illinois, 99; 55 Michigan 173; 36 New Jersey, Equity, 163; 25 New Hampshire 343; 60 New Hampshire 442; 45 Vermont 145.

In view of the foregoing, summoned up in one view, the Court is led very

strongly to the opinion, that the common law rule as to the point here raised, does not apply in this State, and that, consequently, the will in this case ought to stand and be received to probate.

Therefore it is ordered and decreed, this 31st day of May, 1892, that the petition and caveat in this case be dismissed with costs, and that the will be admitted to probate upon the usual proof of its due execution.